SIGAFUS v. PORTER et al.

(Circuit Court of Appeals, Second Circuit. January 8, 1898.)

No. 10.

1. TRIAL—MOTION TO DISMISS—WAIVER.
   A defendant, by introducing evidence, waives a motion to dismiss, made at the close of plaintiff's case.

2. APPEAL—REVIEW—MOTION FOR NEW TRIAL.
   Orders denying motions for new trial are not reviewable in the federal courts.

3. FRAUD—FALSE REPRESENTATIONS—LIABILITY FOR.
   One making false representations to induce the purchase of property is equally liable therefor whether he owns the property or not, and whether the representations are made directly to the purchaser, or to one acting in his interest, and who reports them to him.

4. SAME—ACTION—PARTIES.
   Purchasers of property, who acted in the matter for themselves and others, the plan which was carried out being to form a company to which the property should afterwards be transferred, may sue in behalf of themselves and all others in interest to recover for false representations inducing the purchase.

5. APPEAL—OBJECTION TO EVIDENCE—SUFFICIENCY.
   An objection to the testimony of an expert witness as to the quality of ore produced by a mine as "incompetent, irrelevant, and immaterial" is too general to support a specific assignment of error on the ground that it had not been shown that the witness was at the mine at the particular time inquired about.

6. SAME—QUALIFICATION OF EXPERT.
   A ruling admitting the testimony of an expert over a general objection will not be reviewed because a subsequent cross-examination showed the witness to be incompetent, where no request to examine as to his competency was made by the party objecting, and no motion was made to strike out his evidence after the cross-examination.

7. EVIDENCE—FRAUDULENT REPRESENTATIONS—LETTERS.
   Where plaintiffs claimed that they were induced to purchase property by false representations made by defendant to one acting in their behalf, letters from such person were admissible to show the communication to them of such representations.

8. SAME—PAROL EVIDENCE TO VARY WRITING—LIMITATION OF RULE.
   The rule that parol evidence is inadmissible to vary a sealed contract is limited to actions between the parties or their privies, and a third person suing one of the parties may show by the testimony of the other that such an instrument does not represent the real contract between the parties thereto.

9. CIRCUIT COURTS OF APPEAL—CERTIFICATION OF QUESTIONS—DECISION.
   A circuit court of appeal will not withhold a decision of other questions presented for review in a cause because on one out of many it desires the opinion of the supreme court.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Dudley Porter and others against James M. Sigafus to recover damages for deceit. There was judgment on a verdict for plaintiffs, and defendant brings error.

This cause comes here on writ of error to review a judgment in favor of the defendants in error, who were plaintiffs below, against the plaintiff in error, who was defendant below. The judgment was entered upon the verdict of a jury. The action is one to recover damages for deceit by defendant inducing the purchase of a gold mine (real estate, improvements, plant, and mining rights) by the plaintiffs. Much testimony was taken, and the court left it to the jury under instructions that it was incumbent upon the plaintiffs to establish that the defendant had been the author of fraudulent representations or fraudulent concealments in respect to material matters affecting the value of the property; that it was the fraud which induced the contract, and that, but for it, the purchase would not have been made. The jury were further charged that "the measure of damages in actions of this nature is the difference between the value of the property as it proved to be and as it would have been as represented." The facts material to the assignments of error sufficiently appear in the opinion.

Edmund Wetmore and Joseph H. Choate, for plaintiff in error.
Albert Stickney, for defendants in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Out of the 32 assignments of error, 30 have been supported by argument in this court. They may be arranged in 17 groups, and are hereinafter discussed.

1. The exception reserved to the court's denial of the motion made at the close of plaintiffs' case to dismiss the complaint is of no avail. By not resting on his motion, and by thereafter offering his own evidence, the defendant waived his motion. Runkle v. Burnham, 153 U. S. 222, 14 Sup. Ct. 837. This disposes of the twenty-first assignment of error.

2. Orders denying motions for new trials are not reviewable in the federal courts. Railroad Co. v. Fraloff, 100 U. S. 24. This disposes of the twenty-ninth, thirtieth, thirty-first, and thirty-second assignments of error.

3. Exception was duly reserved to the refusal of the court to dismiss the complaint at the close of the testimony, and is properly presented here by assignment of error. To understand and dispose of this exception it will be necessary to some extent to set forth the facts. Defendant practically owned the mine, and had owned it for some time, and there was evidence tending to show that he wanted to sell it. Some time in May, 1893, one Griffith met defendant, and told him he knew of some people in Los Angeles to whom he thought the property could be sold. Thereupon a contract was made between them in form calling for the sale of the property to Griffith for a sum named therein. Griffith was unable to sell the mine to these parties, and notified defendant to that effect, whereupon this contract terminated. On July 5, 1893, defendant and Griffith entered into a second contract under seal, whereby defendant agreed to sell and convey the property to Griffith for $230,000. On August 24, 1893, they entered into a third contract, also under seal, referring to the second contract, and to the fact that time was not of the essence of such contract, and providing that, in consideration of Griffith agreeing to make time the essence of said contract, defendant would sell and convey, and Griffith pay the $230,000, on or before January 1, 1894. It reserved to defendant the right and privilege at any time

before January 1, 1894, to sell the property at not less than $230,000 ($115,000 cash at 30 days), in which event he would pay Griffith $5,000. It was further stipulated in the contract that Griffith should go immediately to New Orleans, and endeavor, as agent for Sigafus, to sell the property to parties named therein for $350,000, or such other price as Sigafus might authorize Griffith to accept. In the event of effecting the New Orleans sale Griffith was to have 10 per cent. as commission. Subsequently to the making of this contract, Griffith succeeded in effecting a sale of this property to plaintiffs for $400,000. Before this sale was effected, one Egan, a mining expert, had visited the mine, had seen Sigafus, had been furnished with what purported to be a report on the mine by another mining expert (Burnham), and had made an examination of the mine and of a mill run conducted while he and Sigafus were there. Griffith associated Egan and a Col. Platt with himself in the enterprise of selling the mine, the three to divide profits between them. Charles W. Morse was the first of the plaintiffs to hear of the mine, meeting Griffith, Platt, and Egan in Denver, in October, 1893, and there is evidence tending to show that it was in part upon his employment that Egan went to the mine to make his examination. Subsequently Morse brought the other two plaintiffs into the scheme, and, after receipt of Egan's reports, oral and written, as to the mine, they, on December 28, 1893, completed the purchase for the price named, $400,000. The complaint avers that previous to December 28, 1893, defendant, through Griffith, entered into negotiations with plaintiffs for a sale to them of said mine, and plaintiffs entered into negotiations for the purchase of said mine, and thereupon, and in the course of said negotiations, the defendant falsely and fraudulently, and with intent thereby to deceive and defraud, made certain false representations, etc., specifically set forth in the complaint; that thereafter, and on December 28, 1893, plaintiffs, believing said representations to be true and correct, and relying thereupon, and induced thereby, purchased said mine. In support of the motion to dismiss it is contended that there was no proof sufficient to go to the jury that Griffith was in any way the agent of the defendant to sell the mine; that it appears that the relation was that of vendor and vendee, and that plaintiffs' sole contract was with Griffith. Also that at the time of Egan's visit to the mine there was no relation existing or intended between the plaintiffs and Sigafus. In reply to this it might be sufficient to say that an action for false representations will lie against the falsifier, whether the sale thereby induced is of his own property or of another's. The court accurately expressed the theory upon which recovery was had in the charge to the jury:

"The plaintiffs claim that they were induced to make the purchase in consequence of false representations made to and fraudulent devices practiced on Egan by the defendant, while Egan was making the examination of the property, whereby Egan was led to believe the Burnham report to be true, and other facts to be true, afterwards incorporated into a report made by himself; that the defendant practiced these frauds on Egan, knowing him to be acting in the interest of prospective purchasers, and expecting that he might mislead them by giving them incorrect information contained in the Burnham report and his own report about the property; that Egan did give

the erroneous information to the plaintiffs, did corroborate to them the statements in the Burnham report; and that the plaintiffs, relying upon the truth of the various facts stated in that report and in Egan's report, purchased the property. If the jury find this theory to be established by the evidence, the defendant is responsible to the same extent that he would be if he had personally misrepresented the facts to the plaintiffs, and personally misled them by fraudulent practices."

There was no objection taken or exception reserved to this part of the charge. Had defendant at the trial insisted that the case thus submitted to the jury was variant from that set out in the complaint (and we do not now decide whether it was or not), the complaint might have been amended to conform to the proof; and, indeed, such amendment might now be made, if it were necessary. But there was abundant evidence to sustain the verdict upon the theory that Sigafus was in fact undertaking to sell his own mine through the agency of Griffith. He held the title until the plaintiffs paid the money. The testimony fairly warrants the inference that when he made the contract of sale to Griffith (which he himself in his testimony refers to as a bond,—folio 862) he knew that Griffith had no money to buy the mine with, and that the contract would be valueless and void, as the earlier one was, unless Griffith found some real purchaser in Los Angeles, or New Orleans, or the East, or elsewhere. There was testimony in the record, quite sufficient, if the jury believed it, as they did, to indicate that Sigafus had very good reason for keeping his own personality as much as possible in the background when the mine was to be offered for sale to a bona fide purchaser. Griffith testified that on the day he left the mine, after the last contract was made, to look for a purchaser, Sigafus told him he could sell the property on the best terms possible; that he (Griffith) told Sigafus that he could not get all the money down as his contract called for, but that he believed "these people have money, and told him about a telegram Colonel Egan had sent to Morse. He [Sigafus] said, make the best terms possible, and he would stand by it." It would have been manifest error to take the case from the jury in the face of such evidence, and, if defendant wished to have the attention of the jury more specifically directed to his theory of what the proof showed, he should have asked for instructions.

A further ground on which motion was made to dismiss was that "there was no relation between the plaintiff Morse and Colonel Egan at the time of Egan's examination of the mine that would enable Morse, any more than the other plaintiffs, to hold the defendant liable for the statements made to Egan." It will be a sufficient reply to this proposition to refer to the testimony of Morse, Griffith, and Egan to the effect that Egan went to the mine to make his examination upon the employment of Morse and Platt.

The other propositions advanced in support of the motion to dismiss deal with the evidence generally, it being contended that there was no proof of false and fraudulent representations made by defendant with intent to induce the sale, which were material, and were relied upon by plaintiffs. It would be a waste of time to enter into any discussion on this branch of the case.

84 F.—28

What credit was to be given to the story of particular witnesses, how satisfactory might be the explanations offered of some of defendant's letters, were questions for the jury to pass upon; but to contend, in the face of the evidence of Doran and his wife, of Egan, Morse, and Hobson, and of the cross-examination of the defendant himself, that there was no evidence to go to the jury, is preposterous. There was no error, therefore, in denying the motion to dismiss. This disposes of the twenty-fourth assignment of error.

4. Defendant excepted to so much of the charge as instructed the jury that, "if defendant authorized Griffith or Egan to use the Burnham report for the purpose of influencing prospective purchasers," etc., "plaintiffs are entitled to recover," on the ground that there was not sufficient proof to go to the jury that defendant authorized either Griffith or Egan to use such report for such purpose. If it be assumed that Griffith was in reality defendant's agent to sell, and, as has been shown, there was evidence tending to establish that relation, it would be a perfectly fair inference that, when Sigafus gave him the Burnham report, he expected and intended that it should be used to help the sale. But we need not even make this assumption. There was abundance of evidence tending to show that the Burnham report which was put into Egan's possession came originally from Sigafus through Griffith; that, when he came to the mine, Egan told Sigafus that he was to make an examination for Morse and others, and that one purpose of the examination was to verify the Burnham report; that they (Egan and defendant) had subsequent interviews, in which this report was referred to, and Sigafus stated that certain parts of it were correct. The exception is wholly without merit. This disposes of the twenty-fifth assignment of error.

5. Plaintiffs sued in behalf of themselves and their associates jointly interested and associated with them in the enterprise. The evidence shows that from the beginning what they contemplated was the formation of a company to which the mine should be turned over, and which should be composed of such of their friends as might be inclined to take an interest in the enterprise; and that a number of persons other than plaintiffs, some prior and some subsequent to the consummation of the sale, signed a subscription paper, which pledged them to take and pay for the respective interests therein set forth. Although the plaintiffs were the only persons appearing at the final transfer of the property from defendant, the real parties in interest were those who had thus united in the purchase, and we know of no reason why, under section 449 of New York Code of Civil Procedure, suit could not be maintained by the plaintiffs, with whom the negotiations were had, and to whose agent the representations were made, to recover the entire damages, which, when received, they would have to distribute ratably among their associates. This disposes of various exceptions to the admission of evidence, and to the charge and refusals to charge, which are set forth in the twelfth, thirteenth, and twenty-seventh assignments of error.

6. Exception was taken to testimony given by some of plaintiffs'

witnesses tending to show a falsification by one Cheatham of the mill run which was had as part of Egan's examination, on the ground that Cheatham's acts were not sufficiently connected with defendant. Cheatham was defendant's foreman of the mine, introduced by him to Egan as the man who would "give him every assistance in his power." Defendant was himself present and overseeing whatever was going on while Egan was there. The falsification of the mill run was accomplished in part by bringing up from the levels some sackfuls of peculiarly rich ore, which had been mined before; and there was direct evidence, fortified by letters of the defendant, tending to show that that rich ore was put in those sacks. and laid away, by his express direction, "to be used in case prospective buyers exacted a mill test." There was also direct evidence tending to show that Sigafus himself falsified this same mill run by throwing in valuable specimens of rich ore not brought up from the workings while the mill run was going on. Naturally enough, Cheatham testified that he did not falsify the mill run, and Sigafus that he did not direct or authorize Cheatham to do so, but there was sufficient in the case to warrant the jury in finding the converse to be the truth; and, that being so, the evidence as to actual falsification under Cheatham's direction was admissible. This disposes of the first and second assignments of error.

7. One James B. Doran, a witness called for plaintiffs, was asked this question: "Are you able to state with substantial accuracy the average richness of the ore in the Good Hope Mine in November, 1893?" This was objected to as "incompetent, and as calling for an opinion." It is a subject as to which the opinion of experts is proper testimony, and Doran was certainly qualified to express an opinion, since he had been a practical miner for 24 years, having "done nearly everything from tool boy up to superintendency," and had been in charge at defendant's mine from August, 1889, till he fell sick, in August, 1893. It is now contended that his testimony should have been excluded, because it does not appear that he was in the mine after he was taken sick, in August. No such specific objection was made at the trial, and it is apparently an afterthought of counsel. Had it been duly taken, however, we are still inclined to hold the exception unsound. The evidence pretty clearly indicates that under Sigafus' methods of having the mine worked there was not much chance of any material change in three months, and, although there is no evidence to show that Doran was in the mine in November, there is no evidence to show that he was not, and, for aught that appears, he saw the ore which came out of the mine, even if he did not go down into it after his sickness, in August. His opinion as to the value of the ore was admissible. What consideration should be given to it was for the jury. We prefer, however, to put our decision as to this exception on the ground that the objection was not fairly called to the attention of the judge who tried the cause. The stock objection "incompetent, irrelevant, and immaterial" covers a multitude of sins. There is hardly an objectionable question but what can be classified under

one or other of these heads. Sometimes the real nature of the objection is so plain that the general phrase will be quite sufficient to indicate it; indeed, it may be quite apparent without any statement of the grounds of objection at all. But there are many other objections which rest upon some particular theory of the case, or upon some single fact in proof, which a judge may readily forget in the course of a long and intricate trial. It is only fair in such cases to require counsel to state clearly to the trial judge on what ground it is that they object. Certainly it is not fair to allow such a general dragnet as "incompetent, irrelevant, and immaterial" to be cast over every bit of evidence in the case which counsel would like to keep out, and then to permit counsel, upon careful analysis of the printed narrative of the trial, to formulate some specification of error not thought of at the time, and which, if seasonably called to the court's attention, might have been avoided or corrected. This disposes of the third assignment of error.

8. An exception to the admission of a similar question to one Kingsbury as to the value of the ore in sacks is disposed of in the like manner. Incidentally it may be noted that at the time the question was asked it appeared that Kingsbury was a miner of several years' experience. No request was made to be allowed to cross-examine him as to his qualifications as an expert before taking the answer. Subsequent cross-examination developed the fact that he had never made an assay of this ore, nor pounded it in a mortar, nor panned it,—circumstances which are now relied upon to support the assignment of error. But no motion was made, after cross-examination, to strike out the evidence; and the point now raised was never called to the attention of the circuit judge, who, of course, ruled upon the original objection solely in the light of the testimony as it stood when the objection was raised. This assignment of error is also apparently an afterthought. This disposes of the fourth assignment of error.

The fifth assignment was withdrawn on the argument.

9. Objection was interposed to the entire deposition of Egan on the ground that "there is no evidence in the case that Egan represented the plaintiffs, or that there existed at that time between Egan and the plaintiffs any engagement, or even any knowledge of each other." This objection was sufficiently disposed of by the evidence of Morse, Griffith, and Egan himself that the latter went to the mine to examine it on the employment and at the request of Morse. This disposes of the sixth assignment of error.

10. Upon his direct examination Egan was asked: "What conversation, if any, did you have with Sigafus as to the Burnham report?" Objection was taken on the ground that "there is no evidence thus far introduced in the case as to what the Burnham report was." Whatever deficiency there may have been in the proof at the time this question was asked, there was abundant evidence before the case closed to warrant a finding that the particular "report" as to which Egan had conversed with Sigafus was one sent out by the latter, containing additions to the original report, which additions included statements which defendant's counsel on

the trial admitted to be fabrications. The exception reserved is without merit. This disposes of the seventh assignment of error.

11. The various objections to testimony set forth in the eighth and ninth assignments of error are based on the proposition that Egan did not represent the plaintiffs. The remarks in subdivision 4 of this opinion, supra, sufficiently dispose of them.

12. The hypothetical questions put to the witnesses Egan and Olcott, which were framed so as to elicit testimony tending to show the value of the property had it been as plaintiffs' evidence tended to show it was represented, and its value as it really was, have been carefully compared with the evidence, and, in our opinion, are fairly within the rule, which authorizes counsel to "assume the existence of any state of facts which the evidence fairly tends to justify." It might be that plaintiff would not succeed in convincing the jury that Sigafus was substantially the father of the altered and fabricated edition of the Burnham report which he sent out, and about which Egan testifies that he talked to him; but certainly there was evidence tending to connect this edition with the defendant. And the "hypotheses" in the questions are in accordance with the statements in such report. Incidentally it may be noted that the jury apparently did not accept the valuation elicited by these questions, but rather fixed upon the price paid as a fair value of the property if it had been as represented. This disposes of the tenth, nineteenth, twentieth, and twenty-third assignments of error.

13. In view of the testimony already referred to, the objection reserved in the eleventh assignment of error that plaintiffs' Exhibit A —the fabricated edition of the Burnham report which Egan had— was not sufficiently identified to warrant its being read in evidence, is without merit.

14. Certain letters of Egan to Morse and Platt (including one to Roberts, Platt's secretary) were put in evidence, to which defendant duly objected as "not binding on defendant, and as immaterial, irrelevant, and incompetent." No claim is made that they were "binding on defendant." It is the other grounds of objection only that need be considered. The letters were written while Egan was conducting his examination at the mine. The action is to recover damages for false and fraudulent representations alleged to have been made by defendant, and in reliance upon which representations the plaintiffs purchased the mine. As matter of fact the defendant and plaintiffs never met (until the day title was passed). It is evident, therefore, that plaintiffs must show some conveyance of the representations from defendant to plaintiffs. This they undertook to do by proving that Sigafus deceived Egan; that Egan, relying on Sigafus' misrepresentations, made a most favorable report to his employers, upon the strength of which they bought. Manifestly, to do so they would have to establish two entirely separate propositions,—one the misrepresentations by Sigafus to Egan, and the other the reproduction in some form of those misrepresentations by Egan in his report to his employers. It is practically conceded that Egan's report was competent, relevant, and material. No objection was interposed to its

reception. Supplemented by the testimony of plaintiffs, it tended to show on what they relied when they decided to purchase. Whether this report contained material misrepresentations, which were induced by fraudulent representations or concealments of Sigafus, which misled Egan, was a question to be established by other proof; but, when established, the chain of proof would be complete. The court correctly charged the jury that, if they believed the plaintiffs "were influenced by Egan's corroboration of the Burnham report, and by his own report, then the important question is whether Egan was deceived and misled by the defendant and whether he [defendant] falsely represented to him [Egan] the facts stated in the two reports." But, if Egan's "report" on the mine was admissible, it is difficult to see why these other written descriptions sent by him to his employers of what he found there, and of what was the present appearance and past history of the mine, are not equally so. It would be for the jury to determine whether any material false statements in them were induced by fraudulent misrepresentations by defendant, relied upon by Egan. Any sentences in the letters not thus material or relevant might have been excluded from the jury, had attention been called to them specifically; but, as a whole, each letter was admissible as a part of Egan's report to his employers, upon which there was evidence tending to show that plaintiffs relied in making their purchase. This disposes of the fourteenth, fifteenth, and sixteenth assignments of error.

15. Exception was reserved to testimony of the witness Wood that the two reports (Burnham's and Egan's) were submitted to the investors. In view of the opinion already expressed, it is unnecessary to discuss this exception. Exception was also reserved to a question to the same witness whether he made any statements to them as to the contents of the papers, upon the ground that such statements were not brought home to defendant. Inasmuch as the witness replied that he could not recollect that he made any definite statement to them, any discussion of the sufficiency of the objection would be a waste of time. The answer was harmless. This disposes of the seventeenth assignment of error.

16. It will be remembered that, in support of plaintiffs' contention that Griffith was in reality the agent of Sigafus to sell the mine, Griffith was allowed to testify that on the day he left the mine, after the last contract was made, to look for a purchaser, "Sigafus told him he could sell the property on the best terms possible"; that he (Griffith) said to Sigafus, "We cannot get all the money down as my contract calls for, but I believe these people have money; and I told him about a telegram that Col. Egan had sent to Morse"; and that he (Sigafus) said, "Make the best terms possible, and he would stand by it." This was objected to as incompetent, and exception reserved. The ground of the objection is that plaintiffs could not, by the testimony of one of the parties thereto, vary the terms of a written contract under seal. If this were an action upon the contract under seal by Sigafus against Griffith, or by Griffith against Sigafus, there would be force in the objection that neither party could vary its terms by parol testimony; but we know of no principle of law which precludes a third person,

who is suing one of the parties to a sealed instrument upon a cause of action not arising upon such sealed instrument, from showing that the instrument was in fact a mere device concocted to mislead outsiders dealing with one or other of the parties to it, and not truly representing the relations between these parties. This disposes of the eighteenth assignment of error, and the twenty-second was withdrawn on argument.

17. The only remaining assignments of error are the twenty-sixth, to so much of the charge as instructed the jury that the "measure of damages is the difference between the value of the property as it proved to be and as it would have been as represented," and the twenty-eighth, to the refusal to charge substantially that the measure of damages is the money plaintiffs had paid out for the mine, with interest, and any other outlay legitimately attributable to defendant's fraudulent conduct, less the actual value of the mine when plaintiffs bought it. In view of the recent opinion in Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, this court desires the instruction of the supreme court for its proper decision of the question arising upon these two assignments of error. A certificate in the form required by the act of March 3, 1891, has, therefore, been prepared, and will be forwarded to the supreme court. The fact that instructions are thus desired as to a single question out of the many arising upon this writ of error affords no sufficient ground for withholding the decision of this court as to the other questions in the cause. Compton v. Railroad Co., 31 U. S. App. 486, 15 C. C. A. 397, and 68 Fed. 263. This opinion is therefore placed on file, and, when instructions are received as to the question certified, the cause will be finally disposed of.