## W. M. CLEGHON v. BARSTOW IRRIGATION COMPANY.

### Decided February 3, 1906.

#### 1.—General Demurrer—Effect.

In considering a general demurrer every reasonable intendment and meaning favorable to the pleader will be indulged, and if the words used are capable of any reasonable interpretation sustaining the pleading this will be adopted.

#### 2.—Same—Action for Deceit—Sufficient Petition.

A petition from which it substantially appears that a "water right" is an appurtenance of great value to one of the subdivisions of plaintiff's land; that plaintiff did not know upon which of said subdivisions said water right was situated and that defendant irrigation company, whose duty it was to supply the water, alone had this information; that upon application to defendant's general manager plaintiff was falsely and fraudulently informed as to the location of said water right; that said false statement was knowingly made by said manager with intent that plaintiff should act thereon; that plaintiff did act thereon, and was damaged thereby; that plaintiff was ignorant of the truth and relied on said statement, is sufficient as against a general demurrer.

#### 3.—False Representations—Liability—Agent.

A principal is liable for the false representations of his agent if made within the apparent scope of his authority, with intent to deceive and that the party to whom made should act on the same, whether the particular consequences were in the mind of the agent or not, provided they were the natural consequences. Nor is it necessary that the principal should be a party to the contract which resulted in the loss, nor that he should be benefited by the deceit, nor that he colluded with the party who was benefited.

Appeal from the District Court of Ward County. Tried below before Hon. James L. Shepherd.

*Jas. F. Ross* and *F. J. Hefner,* for appellant.

*J. E. Starley,* for appellee.—The facts constituting the right of a party to recover, and fixing the liability of his adversary, must be averred directly and distinctly in his pleading, and not left to be supplied by inference, otherwise the pleading is subject to general demurrer. Western U. Tel. Co. v. Henry, 27 S. W. Rep., 63.

One party is not liable to another for a false or fraudulent representation resulting remotely in damage to him unless such representation was made under such circumstances as to place the first party under some obligation or duty to give to the second party correct information.

A corporation is only liable for the false representations of its officers or agents when such representation is made directly for its benefit or in the course of its business. Wright v. McKenney, 34 Texas, 568; Lewis v. Hatton, 86 Texas, 535; 7 Am. and Eng. Ency. of Law (2d ed.), p. 830; Henderson v. San Antonio, etc., R. Co., 17 Texas, 560; Texas Consol. Compress Assn. v. Dublin Compress, etc., Co., 38 S. W. Rep., 404.

CONNER, CHIEF JUSTICE.—Appellant instituted this suit in the District Court of Ward County on the first day of May, 1905, but the court sustained a general demurrer to his petition, and appellant having

declined to amend, judgment of dismissal was entered against him from which he appeals.

Appellant's petition, omitting purely formal parts, is as follows: "W. M. Cleghon, hereinafter styled plaintiff, complaining of Barstow Irrigation Company, hereinafter styled defendant, respectfully represents to the court:

"1.  That plaintiff resides in the county of Ward, and State of Texas, and that the defendant is a private corporation, duly organized and chartered under and by virtue of the laws of the State of Texas, for the purpose of irrigation, and owns and operates a system of canals for irrigation in said Ward County, and in which said county the defend- ant's principal office and place of business is located.

"2.  That Geo. E. Barstow, who resides at the town of Barstow in said Ward County, is the treasurer of said corporation, upon whom service of process may be had.

"3.  That heretofore, to wit: some time during the month of Febru- ary, 1900, plaintiff became and was the owner in fee simple of certain tracts and parcels of land, situate in said Ward County, Texas, com- monly known, designated and described as water tracts Nos. 1 to 4, both inclusive, all situate within and comprising a part and portion of school section No. 52, block No. 33, H. & T. C. R. R. Co's. survey, and containing each 40 acres of land more or less.

"4.  That each of said tracts and parcels of land is situate in Ward County, as aforesaid, and that said Ward County is within the arid portion of the State of Texas, and is a section of country in which, by reason of insufficient rainfall, irrigation is necessary for agricultural purposes.

"5.  That prior to the time of plaintiff's ownership of said land there had been issued and located upon said water tract No. 4 a paid up water right, and upon which said land said water right had become and was, by the terms thereof, an appurtenance thereto.

"6.  That the water right aforesaid, located as aforesaid, entitled plaintiff to receive from defendant and through its system of canals, aforesaid, water for the irrigation of said water tract No. 4, for the cultivation of crops thereon, by reason of which fact plaintiff avers that said water right was and is of great value, his said land being agricultural, and situate as aforesaid in the arid portion of this State.

"7.  That at the time plaintiff acquired title to said land, together with the appurtenances thereto belonging, and became the owner there- of, he was aware of the fact that a paid up water right had been located upon some one of the several water tracts of which he had become owner as aforesaid, but was in ignorance as to its true location; that plaintiff, knowing the fact that defendant was in possession of the records showing the true location of the said water right, and being, in fact, the only source from which such information could be had, some time in the latter part of the year 1902 or in the early part of the year 1903, ap- plied at the principal office of the defendant, in the town of Barstow, in said Ward County, for the express purpose of ascertaining from said defendant the true location of said water right, and then and there requested such information from defendant through its then agent and general manager, H. C. Barstow; that said H. C. Barstow as such agent

and general manager in compliance with plaintiff's said request, did then and there pretend to consult certain records in which was the true record of the true location of said water right, which records plaintiff avers were then and there, and at all times prior and subsequent thereto, in the custody and possession of defendant.

"8. That said defendant, with intent to defraud and injure plaintiff, did then and there falsely and fraudulently represent to plaintiff, that the said records showed said water right to be located upon said water tract No. 2; whereas in fact and in truth, said records then showed and now show said water right to be located upon said water tract No. 4; that the defendant then and there made such representations to plaintiff knowing the same to be false, and with the intention that he, plaintiff, should and would act upon the same.

"9. That afterwards, to wit, some time in the month of January, 1905, plaintiff, relying upon defendant's representation that said water right was located upon said water tract No. 2, and believing said representation to be true, and being desirous of selling that tract of his said land on which there was no water right and of retaining that tract of same on which there was a water right, did, some time during said last named month, convey to one Geo. E. Briggs, by his certain deed in writing, all of said water tract No. 4, together with all and singular the rights and appurtenances thereto in anywise belonging, and did then and there, by the terms of his said deed, also convey to said Briggs his said water right; that plaintiff relying upon defendant's said false representation, and still believing the same to be true, fixed the selling price of said land, so sold and conveyed as aforesaid, without any reference whatever to the value of the water right located thereon, by reason of which fact plaintiff says he received no consideration whatever for his said water right, to his actual damage $1,500.

"10. Wherefore, premises considered, plaintiff prays that defendant be cited to appear and answer this petition, and that upon final trial of this cause he have judgment for his debt and damages, for costs of suit, and for general and equitable relief."

Appellee's answer to the assignment of error complaining of the court's ruling apparently proceeds, in part at least, upon the theory that nothing can be "supplied by inference" in aid of the petition. In other words, that the petition is to be construed most strongly against the pleader, and a supposititious case, together with objections having proper place in special exceptions, is set out in appellee's brief in support of the court's action. In passing upon a general demurrer, however, the contrary rule of construction obtains. Mr. Townes in his book on Texas Pleading, page 257, says: "In considering a general demurrer, every reasonable intendment and meaning favorable to the pleader preparing the instrument will be indulged, and if the words used are capable of any reasonable interpretation sustaining the instrument this will be adopted." See also the following cases, among many that might be cited, where the rule has been applied: Central & Montgomery Ry. Co. v. Morris, 68 Texas, 59; Wynne v. State Nat. Bank of Ft. Worth, 82 Texas, 383; Patterson v. Frazer, 9 Texas Ct. Rep., 1005.

Applying the rule of construction quoted from Mr. Townes, we think the petition before us states a cause of action. It substantially

appears therefrom, that a "water right," of whatsoever it consists, or by whatever it may be evidenced, is a valuable thing, an appurtenance of great consequence to one of the subdivisions of appellant's land that passed with the title. (Rev. Stats., art. 3125) ; that by virtue thereof appellant was entitled to receive from appellee water with which to irrigate the parcel of land upon which said water right was located; that appellant did not know the true location of said water right and that the appellant company was the only depositary of the desired information; that upon application to appellee's general manager—its *alter ego*—appellant was misled, was "falsely and fraudulently" informed by said manager that the evidence in his sole custody showed the location of said water right upon a subdivision of appellant's land on which no such right existed; that such misinformation, such false statement, was knowingly made by said manager with intent that appellant would act thereon. The petition then charges appellant's ignorance of the truth, his reliance upon the false statements and the resulting damage.

There is nothing upon the face of the petition that requires the conclusion that appellant failed to exercise ordinary care, and the service undertaken and the statements made by appellee's agent appear, at least in reasonable intendment, to have been within the authority, or the apparent authority, of said agent. It was not necessary, as appellee contends, that appellant's purpose in making the inquiry should have been made known. If the false misrepresentations and statements were made, as alleged, with intent that appellant should act thereon, and if such representations were within the scope of the agent's authority, or apparent authority, and were made fraudulently and with intent to deceive, then appellee would be liable for the natural consequences although they may not have been in the mind of the agent at the time. In other words, though the precise manner in which the injury resulted may not have been contemplated by the agent, if the injury shown, was one of the natural consequences of the wrong done, appellee's liability remains the same as if the particular consequences intended by the agent at the time had followed. Nor in such case, is it necessary that appellee should have been a party to the contract which resulted in the loss, or that appellee should be benefited by the deceit, or should have colluded with the person who did receive the benefit. Regardless of any trust relation in its technical sense, wherever confidence is reasonably reposed, the law exacts frankness and truthfulness. The earliest case on the subject brought to our attention by our investigation is that of Pasley v. Freeman, 3 T. R. (Dumford & East), 51. This case is not available to us, but is thus referred to in the case of Benton v. Pratt, 2 Wend., 391, 10 L. Ed., N. Y. Com. Law Rep., 169: "The doctrines maintained by the judge in Pasley v. Freeman, 3 T. R., 51, appear to me abundant to sustain this action. That, it will be recollected was the case of a false affirmation made by the defendant, in relation to the credit and responsibility of one Falch, whereby the plaintiff was induced to sell to him on credit, a large amount of goods, wares and merchandise."

The same court in Allen v. Addington, 7 Wend., 9, 11 L. Ed., N. Y. Com. Law Rep., 38, again refers to the case of Pasley v. Freeman in the following language: "The first adjudged case upon this subject

is Pasley v. Freeman, 3 Term. Rep., 52, which was an action in the nature of a writ of deceit. . . . The point decided in that case is, that a false affirmation, made by the defendant with intent to defraud the plaintiff, whereby the plaintiff sustains damages, is the ground of an action upon the case in the nature of deceit. It is not necessary that the defendant should be benefited by the fraud, or that there should be collusion between the defendant and the person benefited." The New York cases cited, review numerous authorities applying the principle announced in Pasley v. Freeman, and Mr. Sutherland in the third volume of his work on Damages, (2d ed.), page 2509, declares that the doctrine of that case is now universally acknowledged. Our Supreme Court in the case of the Texas & P. Ry. Co. v. Megg & Dryden, 11 Texas Ct. Rep., 555, held in answer to a certified question from this court that the railway company was liable in damages for the false statement of one of its agents made in quoting a freight rate in answer to inquiry. The same court later held in the case of St. Louis Ry. Co. v. White, 14 Texas Ct. Rep., 168 and 346, that a railway company was responsible for misrepresentations made by its agent concerning the route which an inquiring passenger should take. The case of Weatherford v. Fishback, 3 Scammon (Ill.), 170, is perhaps more nearly in point than any we have cited. Substantially that was a case where an officious intermeddler, without deriving any advantage to himself from the deceit, and without any collusion between him and the owner of certain land, knowingly and falsely stated to an inquiring person who desired to purchase, that a certain tract of land containing forty acres, which he then and there pointed out to the proposing purchaser, was the land in question. The inquirer relied upon such representation and made a purchase to his injury, in that the land actually acquired was of much less value than the land so pointed out. It was held that the intermeddler was liable, the court stating, "The ground of action is the fraud; the intention to deceive, and whether it be from any expectation of advantage to the party himself, or from ill will towards the other, is held to be immaterial."

The authorities cited, we think, sustain the conclusions announced by us and require a reversal of the judgment. The sufficiency of the petition, tested by the special exceptions urged thereto, is of course not before us, no ruling having been made upon such special exceptions.

For the error of the court, however, in sustaining the general demurrer to appellant's petition, the judgment is reversed and the cause remanded.

*Reversed and remanded.*