### KING v. SHAWVER.
#### No. 12343.

Court of Civil Appeals of Texas. Fort Worth.
June 14, 1930.

Rehearing Denied July 12, 1930.

W. P. Smith, of Mineral Wells, for appellant.

Hood & Shadle, of Weatherford, for appellee.

DUNKLIN, J.

This suit was instituted by Mrs. Nan V. Shawver, a widow, against W. L. (Lee) King and Bill New to recover $590, the amount which the defendants induced her to pay for 20 certain German bonds, each of the face value of 1,000,000 marks, or 20,000,000 marks in the aggregate. It was alleged in plaintiff's petition that she was induced to purchase

said bonds and to pay the sum stated therefor upon the fraudulent representations made by the defendants, and each of them, that they were United States government bonds, which representations were falsely and fraudulently made for the purpose of deceiving and swindling the plaintiff, and which German bonds were absolutely worthless.

According to further allegations in plaintiff's petition, she was old and illiterate and did not discover until long after she had parted with her money the swindle that had been perpetrated upon her. There were further allegations to the effect that prior to the transaction she was personally acquainted with defendant King, who introduced defendant New to her, and vouched for the truth of all the representations made by New; that New represented to her that her Congressman had advised him to see the plaintiff for the purpose of selling to her said German bonds; that Grundy Wimberly, who was plaintiff's banker, had bought some of the bonds and had also advised him to see the plaintiff and sell some to her; that her brother-in-law, E. J. Shawver, who is an experienced man, had also bought some of the bonds and was going to buy more, all of which statements and representations were absolutely false. The German bonds were printed in the German language and plaintiff was induced by the defendants to believe that the same were United States government bonds.

Defendant King filed an answer, consisting of a general demurrer and a general denial. The defendant New filed no answer, but appeared at the trial and testified as a witness. A judgment was rendered in favor of plaintiff against the defendants, jointly and severally, for the amount sued for, and from this judgment defendant King has prosecuted this appeal.

The following are special issues submitted to the jury, with their findings thereon:

"1. Did the defendant New at the time and place alleged by plaintiff represent to the plaintiff, either by words or acts, or both, that he was selling, or attempting to sell her United States Government bonds? Answer: Yes.

"2. Did the defendant King represent, either by acts or words, or both, to the plaintiff that what the defendant New said, if anything, was true, or that the plaintiff could rely upon same? Answer: Yes.

"3. Did the defendant King, while present at plaintiff's home at the time and place in question, by word or acts, or both, aid or abet the defendant New in making the sale of said bonds to plaintiff? Answer: Yes.

"4. Did the plaintiff at said time believe and rely upon said representations, if any, of the defendant New? Answer: Yes.

"5. Was the plaintiff induced, if she was, to make the purchase in question, if any, by reason of said representations, if any? Answer: Yes."

Since the defendant New filed no answer in the trial court, defendant King will be referred to hereinafter as the only appellant.

The findings of the jury have ample support in plaintiff's testimony, and no assignments are presented to those findings as being unsupported by the evidence.

Over objection of appellant, Grundy Wimberly, a witness for plaintiff, was permitted to testify that the German bonds delivered to plaintiff in consideration for the $590 paid by her were of no market value and worthless. The ground of objection was that the witness did not show himself qualified to express that opinion. The witness testified that he had been in the banking business since the year 1923 and was also in the banking business at Boonville for four years; that he made investigation to determine the value of the German bonds delivered to plaintiff, if in fact they had any value; that he made the investigation through the Industrial Digest, a business man's magazine and guide, published in New York City, and found that those bonds were absolutely worthless.

In 8 Ruling Case Law, p. 488, the following is said:

"In order to say of a thing that it has a market value, it is necessary that there shall be a market for such commodity; that is, a demand therefor, and an ability from such demand to sell the same when a sale therefor is desired. Where, therefore, there is no demand for a thing, and no ability to sell the same, then it cannot be said to have a market value."

It thus appears that the information so acquired by the witness was from a publication which made a business of reporting the market on such bonds as the ones in question, and the testimony so given was based, in part at least, on that publication. It is well settled in this state that a witness may testify to market values based upon publications of markets of live stock, and we perceive no reason why the publication referred to by the witness should not furnish a like basis for ascertaining the market value of those bonds. Furthermore, the effort was to show, not the market value of the German bonds, but that they had no market value; in other words, to prove a negative. And the fact that the witness had been in the banking business for a number of years and had never heard of any sales of such bonds, or any offer to sell the same, or any demand therefor, of itself tended to show that they had no market value. Accordingly, the assignment now under discussion is overruled. Texas & P. Ry. Co. v. Donovan, 86 Tex. 378, 25 S. W. 10; Southern Kansas Ry. Co. v. Bennett, 46 Tex. Civ. App. 379, 103 S. W. 1115.

■■ There was no merit in the exception to special issue No. 3, for failure of the court to define the words "aid" and "abet," since those terms are words of common use and therefore the jury must be presumed to be acquainted with their meaning without any instructions from the court. Moreover, issue No. 2 presented the same matter in a more specific manner, and that issue was answered favorably to the plaintiff. Hence even if the exception to issue No. 3 should present error, it would be harmless.

■ The following is quoted from the syllabus of Watson v. Baker, 71 Tex. 739, 9 S. W. 867:

"As affecting the right of a vendee to compensation for a misrepresentation as to the subject of the sale, there is no distinction between misrepresentations made knowingly or by mistake. A false representation, however innocently made, if damage follow, will give the injured party a right to compensation."

The same rule of decisions was announced in the parent decision in Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717, and which has been followed in numerous other Texas decisions listed in note (e), 26 Corpus Juris, p. 1132.

■ In 26 Corpus Juris, p. 1180, the following is said:

"It is not essential to actionable fraud that the guilty party should derive any benefit from his misrepresentation or concealment, nor that he should collude with another who does derive benefit. This rule applies even though defendant was himself a loser. The gravamen of the action is injury to plaintiff, not benefit to defendant."

And in 27 Corpus Juris, p. 13, the following is said:

"It is not essential to liability that the person charged with fraud should have received any benefit therefrom, nor where misrepresentations concern property that he should have owned it. Thus it has been held that, although they derive no personal benefit from the fraud, liability may be imposed upon agents for misrepresentations in behalf of their principals, upon corporate officers for misrepresentations in behalf of the corporation, and upon executors and trustees for misrepresentations inducing purchase of the property under their charge, and that a third party as well as a vendor is liable for misrepresentations inducing the purchase of property. Indeed, where the misrepresentations are made by an apparent disinterested third person, he is held to even a stricter liability than the vendor, and is not excused for commendatory and exaggerated false statements as to the value and quality of the property, and obviously an interested party who pretends to be disinterested is liable for misrepresentations as to value."

■ Also the following from 27 Corpus Juris, p. 9:

"One cannot be held liable for misinformation which another acquired through independent investigation or through the false statement of a third person furnished at the request of both parties. However, the circumstances may be such as to impose liability for representations made by others, as where parties jointly participate in defrauding complainant. This is especially true where there was a conspiracy to defraud but it is not essential to liability that there should be such a conspiracy. Moreover, it is not essential to liability that there should have been privity of contract or personal dealings between defendant and the injured party, and if defendant intended to do an act necessarily resulting in injury to plaintiff, he will be held liable, although he lacked a specific intent to deceive the particular party injured. It is not essential to liability that there should have been special reliance upon defendant individually but it is sufficient if there was reliance upon defendant as one of a group or class."

A great array of decisions are cited in support of the text, including Smith v. Smith, 213 S. W. 273; McKenzie v. Easton, 138 S. W. 1089; Gibbens v. Bourland, 145 S. W. 274, and Cleghon v. Barstow Irr. Co., 41 Tex. Civ. App. 531, 93 S. W. 1020, by this court, all of which involve facts of similar import to the facts of this case.

The following is quoted from 12 R. C. L. p. 403:

"If one refers to another on any subject, it is a general rule of evidence that he is bound by what that person says on the subject, the same as if he had said it himself. Hence if one party to a transaction refers the other to a third person for information, the party making the reference is liable for false and fraudulent representations made by the person to whom he refers. This rule has been applied to representations as to financial responsibility, including previous commercial ratings for which the applicant for credit was originally in no way responsible, to representations of a vendor's agent adopted by the vendor, and to a statement signed by the president and directors of a bank, which was circulated with and referred with approval to a statement in which the cashier set forth the resources and liabilities of the bank. Where two persons unite in putting forth a false statement for the purpose of deceiving and misleading others, one of them cannot escape liability therefor by referring inquirers as to the truth of such representations to the other, especially where he vouches for the latter and assures the inquirer that he will tell the truth."

See, also, 12 R. C. L. pp. 394, 401, and 402; Sigafus v. Porter (C. C. A.) 84 F. 430; Loper

v. Robinson, 54 Tex. 510; McCord-Collins Co. v. Levi, 21 Tex. Civ. App. 109, 50 S. W. 606.

■■ From those authorities it follows that there was no error in refusing to submit to the jury the special issues requested by appellant, presenting the questions whether or not appellant owned any interest in the German bonds; whether or not he received any part of the money paid therefor by the plaintiff; whether or not the statements attributed to appellant by the findings of the jury in answer to special issue No. 2 were made from his own knowledge; whether or not appellant disclosed to the plaintiff all the information he had regarding said bonds; and whether or not appellant knowingly made to plaintiff false statements regarding said bonds.

■ Error has been assigned to the action of the court in permitting the court stenographer to read to the jury the testimony which had been given by plaintiff, Mrs. Nan V. Shawver, and Mrs. John Shawver, who was her witness, after the jury had been considering their verdict for several hours, and when they appeared in court and requested the court to have that testimony read to them. The bill of exception taken by appellant to that ruling of the court was approved by the judge with the following qualification:

"When the jury came in and said they wanted to hear the testimony of the two Mrs. Shawvers, I asked them if there was any particular part of the testimony they desired to have read, and the foreman spoke up and said they desired to hear all of the two witnesses testimony, and their request was granted. Both direct and cross was read."

No effort has been made to show that the stenographer's notes did not correctly report the testimony of the two witnesses. That being true, it is clear that those notes more accurately reproduced the testimony that had been given by the witnesses than could the witnesses have done from memory. We are of the opinion further that the statement contained in the court's qualification to the bill that the jurors desired all of the testimony of the two witnesses read implies that they had either forgotten what the testimony was or had disagreed in their recollection thereof. We perceive no reversible error in that ruling.

■ While the court did not submit the issue as to whether or not the plaintiff relied upon the representations made by appellant King as well as upon the representations made by New, and were induced thereby to purchase the German bonds, yet the court was authorized to render a joint and several judgment against both as joint wrongdoers, and therefore the misrepresentations of New would be chargeable to King also. Especially is this true since evidence without controversy shows that prior to the occasion of the transaction in question the plaintiff had never known New but had known King and had confidence in the latter, and that King introduced New to her and thus initiated the negotiations which resulted in the purchase of the bonds, and thereafter assured the plaintiff that the representations made to her by New were true and that she could rely upon them. In other words, the facts found by the jury conclusively established a collusion between the two defendants to induce her to purchase the bonds. See 12 R. C. L. pp. 399 and 400. Hence, no reversible error is shown by the refusal of the court to submit to the jury appellant's requested issue as to whether or not plaintiff was induced to make the purchase by King's representations as well as by those of New.

No issue was submitted to the jury and none requested by either party as to whether or not the German bonds purchased by plaintiff were worthless; and neither in appellant's motion for rehearing nor by any assignment of error filed in the trial court, aside from the motion, did appellant complain of the action of the court in awarding plaintiff's damage without a finding by the jury in plaintiff's favor upon that issue. However, in appellant's brief he insists that since there was testimony of the defendant New to the effect that those bonds did have a market value, in conflict with the testimony of the plaintiff's witness Wimberly to the contrary, and since the jury did not make a finding on that issue, and since plaintiff did not request a submission of the issue, she thereby waived her right to a judgment based upon her alleged loss and damage.

■ "Fundamental error" has been defined to be an error apparent upon the face of the record, and in Houston Oil Co. v. Kimball, 103 Tex. 94, 104, 122 S. W. 533, 537, 124 S. W. 85, the Supreme Court said:

"The language 'apparent upon the face of the record,' indicates that it is to be seen upon looking at the face of the record (that is, the assignment itself), the fact pointed out by it must show a good and sufficient ground for the court to interfere to prevent injustice being done to one of the parties. Perhaps the best expression is that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily," citing several decisions.

To the same effect, see Oar v. Davis, 105 Tex. 479, loc. cit. 483, 151 S. W. 794; Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Clement v. First Nat. Bank, 115 Tex. 342, 282 S. W. 558.

■ But it is also well settled that an appellate court is not required to examine the entire statement of facts to determine whether or not fundamental error has been com-

934

mitted. Ford & Damon v. Flewellen, 276 S. W. 903, by the Commission of Appeals.

 If the issues submitted to the jury and their verdict thereon be considered a part of the record equally with the pleadings of the parties and the judgment rendered, in order to sustain plaintiff's contention, the statement of facts would have to be examined to determine whether or not the evidence was sufficient to sustain the court's implied finding of damages, and whether or not there was a conflict of testimony upon that issue, since it is a well-established rule of decision that if the testimony conclusively showed that the German bonds were worthless, then the court would not be required to submit that issue to the jury. The assignment of error now under discussion is therefore overruled.

The judgment of the trial court in favor of plaintiff against appellant is affirmed, and the judgment in favor of plaintiff against the defendant New, of which no complaint has been made, is left undisturbed.