## HUNTER MILLING CO. v. SATTERWHITE.
### No. 9858.

Court of Civil Appeals of Texas. Galveston.
April 28, 1933.

Rehearing Denied May 25, 1933.

A. M. Barton and Paul S. Colley, Jr., both of Palestine, for plaintiff in error.

Aldrich & Crook, of Crockett, for defendant in error.

GRAVES, Justice.

The milling company sued Satterwhite for $948.75 claimed as damages for the breach of a written contract between them for the sale by it to him of 1,385 barrels of "Hunter's Flyer" flour in monthly installments of 277 barrels each, it being averred that 810 barrels had been accepted and the remaining 575 barrels refused, with the consequent loss to the company on the latter of $1.65 per barrel.

Satterwhite, while admitting the making of the contract, the receipt of the 810 barrels, and his refusal to take the remaining 575 barrels, further answered that the writing declared upon did not embody the entire contract between the parties, but that there

was a further contemporaneous parol agreement supplementary to and forming a part of the writing; that through, Smith Bros., who had acted as its agents in the entire transaction, the milling company had in that manner induced him to enter into it by then falsely and fraudulently representing to him that the "Hunter's Flyer" was "extra high patent" flour and would "repeat," or satisfy' his customers, when in fact it ·was third patent in quality and worth on the market 50 cents a barrel less than high patent, wherefore, not only had the consideration to him for the contract wholly failed, but he had also suffered damages in consequence of the misrepresentation, the recovery of which he sought by way of reconvention.

The findings of fact and conclusions of law filed by the able trial judge not only further reflect the nature and result of the cause below, but also the grounds upon which a recovery was denied the milling company, and are herewith copied in full:

"Findings of Fact.

"1. In a contract dated July 10, 1929, between The Hunter Milling Company and B. L. Satterwhite, confirmed by The Hunter Milling Company on July 17, 1929, The Hunter Miller Company agreed to sell and B. L. Satterwhite agreed to buy 1,385 barrels of ·Hunter's Flyer' flour in 48 pound bags at $6.35 per barrel, delivered at Crockett, Texas, to be taken out by Satterwhite in equal installments of 277 barrels per month; this ·contract was made in lieu of purchases made July 3, 1928, and August 16, 1928, made by B. L. Satterwhite with The Hunter Milling Company.

· "2. That 810 barrels of 'Hunter's Flyer' flour were 'delivered to and accepted by B. L. Satterwhite under the contract; that The Hunter Milling Company offered to ship to Satterwhite the balance of flour contracted for by him, but B. L. Satterwhite refused to accept the balance, to-wit: 575 barrels.

"3. That on August 13, 1930, after B. L. Satterwhite had refused to accept any more flour under the contract, The Hunter Milling ·Company. terminated the contract as therein provided; that the difference between the contract price and The Hunter Milling Compnay's cost of replacement was $1.65 per barrel, making a total of $948.75 loss to The Hunter Milling Company.

"4. That the contract and sale of the flour was made through Smith Brothers, a brokerage firm domiciled at Tyler, Texas; that Smith Brothers were engaged in a general brokerage business and represented four other flour mills and other companies, as well as representing The Hunter Milling Company.

"5. That 'Hunter's Flyer' was a brand used by plaintiff for a flour manufactured by it, and that all of the flour delivered to defendant under the contract was branded 'Hunter's Flyer' and was of the same quality. That the flour refused by defendant under the contract was of the same quality as that delivered.

"6. That Smith Brothers, in negotiating with B. L. Satterwhite and before the written contract was confirmed by plaintiff, guaranteed every sack of the flour to give perfect satisfaction or the money would be refunded, and that 'Hunter's Flyer' was the best grade of family flour, that the said 'Hunter's Flyer' flour was extra high patent flour, and that it would please the trade and would repeat, that is, customers would give further orders for the same.

"7. That defendant was induced to make the purchase of 'Hunter's Flyer' flour, and did make said purchase upon the faith of the representation and guarantee of Smith Brothers, that said flour was extra high grade flour, was the best grade of family flour, that it would give perfect satisfaction, or that the money would be refunded; that said flour would please the trade and would repeat.

"8. That the 'Hunter's Flyer' flour did not give satisfaction, did not please the trade, did not repeat, and was not extra high patent flour, but was an inferior grade of flour to what it was represented to be by Smith Brothers, but that said flour had some value.

"9. That defendant did not examine any of the 575 barrels of 'Hunter's Flyer' flour, but refused to accept the same for the reason that the 'Hunter's Flyer' ·flour, which had been delivered to him under the contract, was not of the grade it was represented to be/ by Smith Brothers,· but was of an inferior grade.

"10. That the defendant suffered a loss of 50¢ per barrel on the flour delivered under the contract, and that such loss was the proximate result of 'Hunter's Flyer' flour being of an inferior grade to what it was represented to be by Smith Brothers.

"11. That Smith Brothers was the agent of plaintiff in obtaining and making the contract sued upon by plaintiff, and that said Smith Brothers made material misrepresentations to defendant as to the quality of 'Hunter's Flyer' flour, and that defendant relied upon such representation when making said contract.

"Conclusions of Law.

"1. I conclude as a matter of law that the 575 barrels of 'Hunter's Flyer' flour not delivered under the contract was of the same ·grade and quality as the flour delivered and used under the contract, and that such flour was of an inferior grade to what it was represented to be by Smith Brothers, and that Smith Brothers being the agent of plaintiff in obtaining and making the contract sued upon, that defendant was entitled by law to refuse to accept said 575 barrels of flour and is not

liable to plaintiff for any loss incurred thereby.

"2. I find as a matter of law that Smith Brothers as agents of plaintiff having made material misrepresentation to defendant in obtaining the contract sued upon, that such misrepresentation was binding upon plaintiff and authorized defendant to refuse to accept any flour delivered under said contract.

"3. I conclude that under the pleadings and evidence that defendant is not entitled to recover anything against plaintiff in his cross-action.

"Ben. F. Dent,

"Judge 35d Judicial District of Texas."

In this court the milling company makes these contentions:

1. That the answer of Satterwhite did not plead that the parol agreement the court found to have been made was omitted from the written contract through mistake, accident, or fraud; hence its special exception, raising that objection to it, should have been sustained.

2. That testimony heard, whereby the "Hunter's Flyer" flour contracted for was compared in quality to other brands of flour, was not admissible, in the absence of fraud, mistake, or accident, over its objection that the written contract declared upon could only be avoided by proof that the flour it furnished did not measure up to the quality contracted for.

3. The quoted finding that Satterwhite relied upon Smith Bros.' oral representations as to the quality of "Hunter's Flyer" flour "was contrary to the evidence and erroneous."

4. Smith Bros., being merely sales brokers for the milling company, did not have authority to bind it by these so-found parol representations, since he was familiar with the terms of the contract and knew such representations were not only not mentioned therein, but also that it contained these recitations:

"This contract cannot be modified or transferred without the written consent of both parties.

"This contract is subject to confirmation by the seller at Wellington, Kansas."

5. The milling company should have been awarded a recovery, having proved the contract as written, its terms, and the resulting loss to it, there being no proof of any fraud, nor any provision for a rescission thereof.

■■■ None of these presentments, it is determined, should be sustained.

As concerns the first one, it is clear that, while it was not so averred in a stereotyped way in hæc verba, the gravamen of the answer was to charge that the contract as sued upon was without consideration, because the milling company, through its agent, the bro-

kerage firm, falsely and fraudulently represented the flour contracted for to be extra high patent, when in fact it was of an inferior grade—not being better than a third patent quality—and that he had been thereby induced to enter into the transaction in the first instance and to sell the flour to his customers as being of such extra high patent quality, to his injury and damage when it was thereafter shown to be much inferior.

It is true that fraud must be specifically alleged, but our courts have held that there are no hard and fast rules as to how that should be done, and that if the facts charged, when taken as true, show that a fraud has been committed, that is sufficient; when tested by this rule, it is not doubted that actionable fraud was pleaded in this instance. Red Oak Electric Gin Co. v. Waxahachie Nat. Bank (Tex. Civ. App.) 279 S. W. 884; American Slicing Machine Co. v. Vincent (Tex. Civ. App.) 279 S. W. 317; Southern Surety Co. v. Adams, 119 Tex. 489, 34 S.W.(2d) 789; Shepherd Laundries Co. v. Griffin (Tex. Civ. App.) 285 S. W. 683.

It having thus been pleaded in the answer that the contract had been obtained by such fraudulent representations, the court did not err in admitting the evidence next complained of.

■■■ The contract as sued upon was for the sale of flour merely described as "Hunter's Flyer," without specifying the grade or quality thereof, and, since Satterwhite thus pleaded that there was a separate oral agreement at the time particularizing what was meant by that name for the flour, it was proper to prove it up under common-law rule of evidence No. 21 appended to article 3713, Vernon's Ann. Civ. St., to the effect that a contemporaneous parol agreement, consistent with and forming a part of the contract, is to be construed with the written part thereof.

■■■ In the circumstances, there was scarcely any other way of proving up what the quality of the flour actually delivered to Satterwhite was than by comparing it with other brands that did exemplify what this was so represented to be, that is, "extra high patent" flour. Moreover, such proof was also receivable under the averments in the answer that the quality of the flour had been so fraudulently misrepresented; indeed, it was shown that the words "extra high patent" appeared on every sack of it, and that in itself amounted to a representation and a warranty that it was of that grade; hence this evidence was receivable in proof of what kind of standard that meant, none appearing in the mere written designation of "Hunter's Flyer."

■ The third proposition challenging the sufficiency of the evidence to support the court's finding that Satterwhite relied upon

320

the oral misrepresentations referred to is based upon assignments appearing in the record as Nos. 14, 15, and 25; neither the proposition nor any one of these assignments charges that this finding is so against the great weight of the evidence as to be wrong, but they each and all merely, in effect, assert that there is no evidence supporting such finding, the undisputed testimony being to the contrary.

Obviously this position cannot be upheld; in fact, this court, after a careful examination of the statement of facts, is unable to find any lack of support either for this or any of the other quoted findings. There was really no dispute as to what representations Smith Bros. made to Satterwhite concerning the flour thus sold him; both they and he in unison stated that they told him it was extra high patent quality, that it would "repeat," within the meaning of that term as stated in the findings, that it would absolutely satisfy his customers, and that, if it did not, he would get his money back.

It further was undisputed that he looked to them to protect and take care of him in the business; that they guaranteed that the flour would please the trade, and that, with that express understanding with them, he entered upon the effort to sell the flour to his customers; when asked how long he was in observing whether or not it did "repeat," he answered: "I really don't know. I hammered along with it a good long while, and went on longer with that contract than I should." He added that he bought it with the distinct understanding that it was thus guaranteed to be satisfactory, otherwise he would not have made the deal at all.

■ The clear-cut effect of the testimony of Smith Bros. and their representatives was to sustain him in these statements, wherefore, it cannot be held that the finding thus challenged lacked support; that being so, it further follows, under well-settled authority, that the appended conclusions of law were also correct: Horner v. Caldwell (Tex. Civ. App.) 256 S. W. 1023; Spencer v. Womack (Tex. Civ. App.) 274 S. W. 175; Reed v. Hester (Tex. Com. App.) 44 S.W.(2d) 1107; Evans v. Hartman (Tex. Civ. App.) 286 S. W. 326; Ford v. Smith (Tex. Civ. App.) 274 S. W. 166; Lockney Farmers' Co-op. Soc. v. Egan (Tex. Civ. App.) 275 S. W. 732; Tips v. Barneburg (Tex. Civ. App.) 11 S.W.(2d) 187; White v. Carlton (Tex. Civ. App.) 277 S. W. 701, 703.

■ Neither is the fourth proposition, challenging the authority of Smith Bros. to bind the milling company on the ground that they were sales brokers only, and that Satterwhite was himself familiar with the terms of the written contract and knew it negatived the existence of any such parol representations he declared on sound; on the contrary, the proof conclusively, if not undisputedly,

shows that Smith Bros. were more than sales brokers in the well-defined legal meaning of those terms, but that they were sales agents with, in effect, plenary power for the milling company as their principal in entering into this entire contract for it; in the first place, the written part of the contract declared on itself imports as much, having been signed as follows:

"The Hunter Milling Company, Seller
"By Smith Brothers Brokerage Company,
"B. L. Satterwhite, Buyer."

In the next place, the oral testimony in detail clearly made manifest that Smith Bros. were the general sales agents and representatives of the milling company in East Texas in negotiating for and entering into such transactions in its behalf. They were, therefore, clearly the agents of the company in making this contract; hence, as the learned trial court found, any false and fraudulent representations of theirs in making the contract as to the quality of the flour forming its subject-matter were binding upon the milling company. 2 Corpus Juris, p. 856; W. C. Biggers & Co. v. First National Bank of Kaufman (Tex. Civ. App.) 29 S.W.(2d) 841, 842; Shear Co. v. Smith (Tex. Civ. App.) 250 S. W. 727, 731; Barber v. Keeling (Tex. Civ. App.) 204 S. W. 139, 141; Peck v. Robinson & Smith (Tex. Civ. App.) 194 S. W. 456, 457; Sullivan & Co. v. Ramsey (Tex. Civ. App.) 155 S. W. 580, 588; Cleghorn v. Barstow Irr. Co., 41 Tex. Civ. App. 531, 93 S. W. 1020, 1021; Farris v. Gilder (Tex. Civ. App.) 115 S. W. 645, 647; Foix v. Moeller (Tex. Civ. App.) 159 S. W. 1048, 1052; Sargent v. Barnes (Tex. Civ. App.) 159 S. W. 366; 31 Cyc., 1280.

■ As before indicated, and as the last-cited authorities make clear, the branding of each sack of the flour sold as "Hunter's Flyer" with the statement that it was "extra high patent" was also itself as much a part of the whole contract as if that printed information had been written into and expressly incorporated as a part thereof; upon this consideration, too, it is clear that Smith Bros., as such authorized sales agents, did not exceed their authority in warranting that the flour sold would grade as "extra high patent" in quality and would "repeat."

That its failure to sell was directly due to the fact that it was not as represented was affirmatively testified to by Satterwhite, in which he was corroborated by the witnesses Lockfield and Bennett, and that he could have made it "repeat," if it had been of the "extra high patent" quality represented.

■ The arguments and authorities ably presented by the milling company seem to us to have to do with a different kind of cases than is here involved; as quoted, it was simply here provided: "This contract cannot be modified or transferred without the

written consent of both parties," whereas in most, if not all, those cited as being contrary, it is stated, in substance, that the contract must comprise all the agreements in writing, and that no agent is authorized to change the warranty in any respect, nor can any promise, representation, or agreement be made, except as recited in the writing. Obviously, this one differs in that it plainly does not exclude the making of a concurrent oral agreement, or warranty, such as was here declared upon and established.

What has been said disposes of the concluding contention; hence further discussion is unnecessary.

Under the conclusion that the trial court made its findings upon sufficient evidence and properly applied the law thereto, the judgment will be affirmed.

Affirmed.